## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

CHAMBERS OF
**CHRISTINE P. O'HEARN**
UNITED STATES DISTRICT JUDGE

MITCHELL H. COHEN BUILDING &
U.S. COURTHOUSE
4TH & COOPER STREETS
ROOM 6050
CAMDEN, NJ 08101
856-757-5167

February 5, 2025

<u>VIA CM/ECF</u>
David R. Dahan
Beau Charles Wilson
HYLAND LEVIN SHAPIRO LLP
6000 Sagemore Drive
Suite 6301
Marlton, New Jersey 08053

Steven Pietro
555 Pacific Grove Drive
Unit #2
West Palm Beach, Florida
33401

Justice Government Supply, Inc.
555 Pacific Grove Drive
Unit #2
West Palm Beach, Florida
33401

<u>**LETTER ORDER**</u>

Re:    **Rastellis Brothers, Inc. v. Justice Government Supply, Inc.,** *et al*.
<u>**Civil Action No. 24-00390**</u>

Dear Counsel and Mr. Pietro:

This matter comes before the Court on a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), (ECF No. 13), and Motion for Sanctions under Rule 11, (ECF No. 25), by Plaintiff Rastelli Brothers, Inc. d/b/a Rastelli Foods Group ("Plaintiff") against Defendants Justice Government Supply, Inc. ("JGS") and Steven Pietro ("Pietro") (collectively, "Defendants"). The Court held an evidentiary hearing on November 6, 2024. For the reasons that follow, Plaintiff's Motion for Default Judgment is **GRANTED** and **DENIED** in part and Plaintiff's Motion for Sanctions is **GRANTED**.

## I.    <u>BACKGROUND AND PROCEDURAL HISTORY</u>

Plaintiff, a family-run business engaged in providing food products and services globally,

attended an exhibition in February 2021, where it was introduced to Defendant Steven Pietro, acting on behalf of Defendant JGS. (Compl., ECF No. 1 at ¶¶ 1, 13–15, 18–22). Pietro expressed a long-standing interest in doing business with Plaintiff. (*Id*. at ¶¶ 23–24). Following discussions, a business relationship began in August 2022, with JGS placing small purchase orders, which were duly paid. (*Id*. at ¶¶ 25–27).

By August 10, 2023, the parties formalized their relationship through a three-year agreement ("Agreement"), under which the Plaintiff was to process, manufacture, and package products for JGS' customers, with all processing occurring in New Jersey. (*Id*. at ¶¶ 30–33, 35). The Agreement required JGS to pay for these services within thirty days of invoicing. (*Id*. at ¶ 34). Following the Agreement, the value of JGS' purchase orders increased significantly, starting with a $89,376.00 order. (*Id*. at ¶ 39).

Shortly thereafter, JGS failed to make timely payments, with Pietro representing that JGS' customers had not paid JGS. (*Id*. at ¶¶ 40–42). Relying on these assurances, the Plaintiff continued fulfilling purchase orders. (*Id*. at ¶¶ 43–45). However, during a business trip in December 2023, Tony Rastelli, a shareholder of the Plaintiff, discovered that JGS had actually received full payments from at least one customer and that customer provided documentary evidence confirming all payments had been made to JGS. (*Id*. at ¶¶ 46–50). Yet, Pietro continued to deny that JGS had been paid. (*Id*. at ¶ 52).

Due to JGS' outstanding balance of $1,889,153.07, the Plaintiff halted further fulfillment of purchase orders and, on December 27, 2023, sent a formal demand for payment. (*Id*. at ¶¶ 55–58). JGS failed to respond. (*Id*. at ¶ 59).

During a later conference in January 2024, Pietro altered his explanation, then claiming the funds were "tied up" due to international wire transfers. (*Id*. at ¶¶ 60–64). Despite these representations, JGS has still not made any payments and remains in breach of the Agreement. (*Id*. at ¶ 65).

On January 23, 2024, Plaintiffs filed a Complaint alleging ten causes of action against Defendants, including, (1) breach of contract against JGS (Count One), (2) breach of the implied covenant of good faith and fair dealing against JGS (Count Two), (3) unjust enrichment against JGS and Pietro (Count Three), (4) conversion against JGS and Pietro (Count Four), (5) violation of the New Jersey Consumer Fraud Act against JGS and Pietro (Count V), (6) fraudulent inducement and misrepresentation against JGS and Pietro (Count Six), (7) promissory estoppel against JGS and Pietro (Count Seven), (8) violation of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J. Stat. Ann § 2C:41-1 et seq., against JGS and Pietro (Count Eight), (9) civil conspiracy against JGS and Pietro (Count Nine) and (10) injunctive relief in the form of a constructive trust against JGS and Pietro (Count Ten).

On April 4, 2024, the Clerk of the Court entered default against Defendants. (ECF No. 12). Plaintiff, thereafter, filed this Motion for Default Judgment. (ECF No. 13). On June 24,

2024, Defendant Pietro filed a motion to dismiss arguing that he had not been served. (ECF No. 15). The Court considered this filing as opposition to Plaintiff's Motion for Default Judgment. On November 6, 2024, the Court held an evidentiary hearing on the issue of service. (ECF No. 21). Defendants failed to appear. At the hearing, the Court heard witness testimony, received documentary evidence, and determined that both Defendants had, in fact, been properly served. Plaintiff thereafter filed a Motion for Sanctions against Defendants. (ECF No. 25). To date, no counsel has entered an appearance for the corporate defendant and Defendant Pietro acting *pro se* has not filed any responsive pleadings or response to the Motion for Default Judgment or Motion for Sanctions.

## II.    LEGAL STANDARDS

### a.   Default Judgment

Pursuant to Federal Rule of Civil Procedure 55(a), a plaintiff may request an entry of default by the clerk of court as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" FED. R. CIV. P. 55(a). Once a default has been entered, the plaintiff may then seek the entry of a default *judgment*—either by the clerk or the court itself—under Rule 55(b). FED. R. CIV. P. 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, No. 03-01969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, courts generally "do[ ] not favor entry of defaults and default judgments.'" *United States v. Thompson*, No. 16-00857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). When considering a motion for default judgment, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1 (citing 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2688, at 58–59 (3d ed. 1998)). In contrast, "the Court need not accept the moving party's legal conclusions, because even after default it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citing Wright, Miller & Kane, *supra*, § 2688, at 63).

Through this lens, the court must: "1) determine it has jurisdiction both over the subject matter and parties; 2) determine whether defendants have been properly served; 3) analyze the Complaint to determine whether it sufficiently pleads a cause of action; and 4) determine whether the plaintiff has proved damages." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535-36 (D.N.J. 2008).

Additionally, the Court must consider the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers*

*Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)). If these factors weigh in a plaintiff's favor, the court may grant default judgment.

## III.    ENTRY OF DEFAULT JUDGMENT

### A.  Jurisdiction and Service

This Court has original jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

Additionally, for the reasons stated on the record at the November 6, 2024 evidentiary hearing, (ECF No. 23), the Court finds that Defendant Pietro was properly served on February 28, 2024, via personal service in his individual and corporate capacity as President of JGS. Thus, the Court has jurisdiction over the matter and the parties.

### B.  Liability and Appropriateness of Default Judgment

Turning first to the appropriateness of an entry of default judgment, courts must consider the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc.*, 250 F.R.D. at 177 (citation omitted). Based on the allegations in the Complaint, Defendants do not appear to have a meritorious defense as Plaintiffs have provided evidence that a debt is due and owing. Second, Plaintiffs will suffer in the absence of the entry of default judgment as it is owed a significant amount under the Agreement. Finally, Defendants have acted culpably in their actions prompting the filing of the Complaint. The entry of default judgment in this case is appropriate.

1.  <u>BREACH OF CONTRACT, IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING, AND UNJUST ENRICHMENT (COUNTS ONE THROUGH THREE)</u>

Accepting the Complaint's allegations as to liability as true, the Court finds that Plaintiff has stated a claim and Defendant lacks a meritorious defense with respect to Count I, alleging breach of contract. Under New Jersey law, to state a claim for breach of contract, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Plaintiff's Complaint contains facts that meet all four elements. It alleges that the parties entered into a contract pursuant to which Plaintiff would process, manufacture, and package products for JGS' customers and invoice Defendants for that work. (Compl., ECF No. 1, ¶¶ 30–35). Defendants were required to pay those invoices within thirty days or begin to accrue interest at the rate of 1.5 percent per month. (*Id.*; Compl., ECF No. 1, Ex. C). Plaintiff performed its contracted services, but numerous invoices

went unpaid. (*Id.* at ¶ 65). Defendant therefore breached the parties' contracts, causing damages to Plaintiff, which had performed its end of the deal.

As for Plaintiff's claim for implied covenant of good faith and fair dealing, a plaintiff "may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009). To state a claim for breach of the implied covenant, a plaintiff must demonstrate that: "(1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract unless excused; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm." *TBI Unltd., LLC v. Clear Cut Lawn Decisions, LLC*, No. 12-3355, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014). Here, Plaintiff has not demonstrated a plausible cause of action for breach of the covenant of good faith and fair dealing because this claim arises from the same conduct underlying Plaintiff's breach of contract claim and Plaintiff's Motion for Default Judgment on this count is denied.

Similarly, with respect to Plaintiff's claim for unjust enrichment, where a valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust enrichment. *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982). "[B]ecause unjust enrichment is an equitable remedy resorted to only when there was no express contract providing for remuneration, a plaintiff may recover on one of the other theory, but not both." *Caputo v. Nice-Pak Products, Inc.*, 693 A.2d 494, 498 (N.J. Super. Ct. App. Div. 1997). Here, Plaintiff alleges that Defendants were unjustly enriched because they benefited from the retention of the monies paid to JGS by its customers for Plaintiff's fulfillment of those orders. (Pla. Br., ECF No. 13 at 19). Given the existence of the Agreement between the parties, which governs the parties' obligation, Plaintiff cannot recover for both breach of contract and unjust enrichment over the same conduct. Thus, the Court finds no plausible unjust enrichment cause of action and Plaintiff's Motion for Default Judgment on this count is denied.

## 2. CONVERSION (COUNT FOUR)

Under New Jersey common law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1164–65 (N.J. App. Div. 1988). Put differently, conversion is "to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." Prosser & Keeton on Torts § 15 (5th ed. 1984). Conversion is an intentional tort in that defendants must intend to exercise control over the property, but they need not intend to act wrongfully. *Id.*; *LaPlace v. Briere*, 962 A.2d 1139, 1144 (N.J. App. Div. 2009) (endorsing the treatise's definition) Although conversion usually concerns personal chattels, it has been applied to money as well. *See Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 284 (N.J. App. Div. 2009) (affirming summary judgment when defendants unknowingly received fraudulently-obtained money but presented no evidence to suggest that they received the money in exchange for fair value).

Here, not only was Plaintiff's property provided to Defendants, but Defendants were paid by its customers without paying Plaintiff. As such, Plaintiff demonstrates a plausible conversion because Defendants received Plaintiff's property without having paid for it. *See Slater v. Yum Yum's 123 ABC*, No. 20-00382, 2021 WL 2188599, at *5 (E.D. Pa. May 28, 2021) ("Slater alleges a cognizable conversion claim because Defendant has refused to return her personal items, an allegation that we must accept as true."). Plaintiff's Motion for Default Judgment on this count is granted.

### 3.  NEW JERSEY CONSUMER FRAUD ACTION (COUNT FIVE)

To state a cause of action under the NJCFA, a plaintiff must show "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557, 964 A.2d 741 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389, 929 A.2d 1076 (2007)). "The NJCFA does not require a direct relationship, or privity, between plaintiff and defendant. To the contrary, it encompass[es] the acts of remote suppliers . . . whose products are passed on to a buyer and whose representations are made to or intended to be conveyed to the buyer." *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-04209, 2015 WL 1119475, at *5 (D.N.J. Mar. 11, 2015) (internal quotations and citations omitted).

However, breach of contract, alone, is insufficient to give rise to an NJCFA claim. *Hunt Const. Grp., Inc. v. Hun Sch. of Princeton*, No. 08-3550, 2009 WL 1312591, at *5 (D.N.J. May 11, 2009) (explaining that "under the NJCFA . . . neither a claim for breach of contract nor fraud in the fulfillment of the contract is actionable"); *Barry by Ross v. New Jersey State Highway Authority*, 585 A.2d 420, 424 (N.J. Super. Ct. Ch. Div. 1990) (explaining that "reasonable limits must be placed upon the operation of the Act in order that its enforcement will properly reflect legislative intent" and that the New Jersey Legislature did not intend for the NJCFA to apply to every breach of contract claim). "Rather, in order for a party's failure to perform a contract to be actionable under the NJCFA, courts require the plaintiff to allege that 'the promisor knew at the time the contract was formed that he did not intend to fulfill the promise.'" *Corp. Incentives, Inc. v. Unified Safe Guard, LLC*, No. 20-13471, 2021 WL 2043092, at *2–3 (D.N.J. May 21, 2021) (quoting *Barry*, 585 A.2d at 423–24); *Mullin v. Auto. Prot. Corp.*, No. 07-3327, 2008 WL 4509612, at *2–3 (D.N.J. Sept. 29, 2008) (requiring evidence that defendant "never intended to fulfill its obligations under the contract" for a breach of contract to constitute a fraudulent misrepresentation under the CFA).

Here, Plaintiff merely alleges that Defendants failed to perform their obligations under the Agreement; however, that is insufficient to establish a claim under the NJCFA. *See Barry*, 585 A.2d at 424 ("A failure to fulfill a promise may constitute a breach of contract, but it is not fraud and the nonperformance of that promise does not make it so."); *see also Billings v. Am. Exp. Co.*, No. 10-3487, 2011 WL 5599648, at *10 (D.N.J. Nov. 16, 2011) ("[A] breach of a contract does not alone violate the CFA and Plaintiff' allegation does not state a CFA claim by way of Plaintiff's addition of a legal conclusion that such conduct was 'unconscionable' within the meaning of the

Act."). Indeed, Plaintiff has not alleged any facts suggesting that Defendants entered the contract with the express intent of defrauding Plaintiff or that they never intended to fulfill their obligations. *See Corp. Incentives, Inc.*, 2021 WL 2043092, at *3 ("Plaintiff has not alleged any facts suggesting that Defendants entered the contract with the express intent of defrauding Plaintiff or that they never intended to fulfill their obligations."); *Hunt Const. Grp., Inc.*, No. 08-3550, 2009 WL 1312591, at *5 (rejecting a claim that a party's failure to fully perform under a contract gave rise to an actionable affirmative misrepresentation under the NJCFA).

As such, there is no plausible claim under the NJCFA and Plaintiff's Motion for Default Judgment with respect to the NJCFA against both Defendants is denied.

### 4. FRAUDULENT INDUCEMENT AND MISREPRESENTATION AND PROMISSORY ESTOPPEL (COUNTS SIX AND SEVEN)

Under New Jersey law, the elements required to establish a claim of common law fraud, fraudulent misrepresentation, and fraudulent inducement are identical: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi,* 184 N.J. 161, 172–73, 876 A.2d 253 (2005) (quoting *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 610, 691 A.2d 350 (1997)); *see also Jewish Center of Sussex County v. Whale,* 86 N.J. 619, 624–25, 432 A.2d 521 (1981).

The elements of promissory estoppel are "1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." *Lobiondo v. O'Callaghan*, 815 A.2d 1013, 1020 (N.J. App. Div.), *certif. denied*, 827 A.2d 291 (N.J. 2003).

Because Plaintiff's tort claims are founded in the contractual relationship with Defendants—and they have not provided an independent duty owed beyond that of the contract terms— there are no plausible tort claims and Plaintiff's Motion for Default Judgment with respect to Counts Six and Seven is denied.

To be sure, the economic loss doctrine "bars a plaintiff from recovering in tort for damages resulting from the failure of a defendant to perform under a contract." *Tidman v. Eminence Hardscapes, LLC*, No. 22-5441, 2023 WL 3224594, at *5 (D.N.J. May 3, 2023) (citing *Duguesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995) (explaining that New Jersey forbids recovery under a theory of fraud where a counterparty simply promises to perform a contract but ultimately fails to do so)). There are, however, exceptions to the general rule where "the alleged fraud is related to pre-contractual misrepresentations or is 'extrinsic to the performance of the contract,' in other words, fraud in the inducement." *Id.* (quoting *D&D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, 2007 WL 4554208, at *27 (D.N.J. Dec. 21, 2007)). "The question then is whether the alleged fraud amounts to a breach of a contractual duty and is therefore intrinsic and barred, *id.*, or 'if it breaches a duty separate and distinct from the performance of the

agreement's terms.'" *Zurich Am. Ins. Co. v. Asphalt Paving Sys., Inc.*, No. 22-01535, 2023 WL 179962, at *4 (D.N.J. Jan. 13, 2023) (*citing USI Int'l, Inc. v. Festo Didiactic, Inc.*, No. 15-08451, 2022 WL 345086, at *3 (D.N.J. Feb. 4, 2022)).

This is not a situation where "pre-contractual statements were misrepresentations on which Plaintiff relied to enter into an agreement." *Tidman*, 2023 WL 3224594, at *5 (permitting a claim for fraudulent misrepresentation to proceed alongside a breach of contract claim where plaintiff alleged that—before signing a contract—contractors represented to plaintiff that they were "authorized dealers" to induce the plaintiff to hire their services). Rather, the same statements are the basis for both the contract and fraud claims. It is, therefore, impossible to determine where Plaintiff's contract claim ends and its fraud claim begins—"[a]nd that is precisely the scenario that the economic loss doctrine has been developed to avoid." *Zurich*, 2023 WL 179962, at *4.

The same is true as to Count Seven, Plaintiff's promissory estoppel claim. *Corps Logistics, LLC v. Dutil*, No. 20-06683, 2021 WL 795198, at *10 (D.N.J. Feb. 28, 2021) ("[B]reach of contract and promissory estoppel may be alternatively pled. Nonetheless, promissory estoppel cannot be enforced when a court finds that the parties have entered into an enforceable contract." (citations omitted)).

Thus, in addition to their being no independent duty to support Plaintiff's tort law claims, they are barred by the economic loss doctrine.

5.  VIOLATION OF NJ RICO AND CIVIL CONSPIRACY (COUNTS EIGHT AND NINE)

Under New Jersey's RICO statute, it is "unlawful for any person [to] receive[ ] any income derived, directly or indirectly, from a pattern of racketeering activity . . . [and] to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce." N.J. Stat. Ann. § 2C:41–2. The statute defines a "person" as "any individual or entity or enterprise . . . holding or capable of holding a legal or beneficial interest in property." *Id.*

Plaintiffs must establish "five elements in a substantive [New Jersey] RICO offense: (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity." *State v. Ball,* 661 A.2d 251 (N.J. 1995).

A civil conspiracy in New Jersey is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005).

8

There are no allegations in the Complaint of a pattern of racketeering activity or that two or more persons acted together to commit an unlawful act in this case on which to grant default judgment on these Counts. Thus, there is no plausible NJ RICO or conspiracy claim and the Motion is denied as to Counts Eight and Nine.

### 6. CONSTRUCTIVE TRUST (COUNT TEN)

"A constructive trust is an equitable remedy and not a cause of action in and of itself." *Starland v. Fusari*, No. 10-4930, 2015 WL 468333, at *2 (D.N.J. Feb. 4, 2015) (citation omitted). New Jersey courts have traditionally applied a two-part test when determining whether a constructive trust is an appropriate remedy. *D'Ippolito v. Castoro,* 242 A.2d 617, 619 (N.J. 1968). There must be a showing of (1) a wrongful act, which (2) resulted in an unjust enrichment. *Id.* "The essential element for the imposition of a constructive trust is unjust enrichment." *Starland*, 2015 WL 468333, at *2 (citation omitted).

Here, similar to Counts Eight and Nine, there is insufficient evidence to warrant the imposition of a constructive trust; this was a standard breach of contract case. And to be sure, "breach of contract alone is not sufficient and does not qualify as the type of wrongful act or fraud which would warrant the imposition of a constructive trust. Otherwise, a constructive trust might be available whenever there was a breach of an . . . agreement." *Id*. at *3 (citing *Presten v. Sailer,* 542 A.2d 7 (N.J. App. Div. 1988)). Thus, there is no plausible claim under this theory and Plaintiff's Motion on this count is denied.

### C. Damages

Plaintiff seeks $9,529,797.00, which is five times the amount of money owed, $1,905,959.40, under the New Jersey Punitive Damages Act. (Pl. Br., ECF No. 13-3 at 29). Plaintiff's request for punitive damages is denied. There are simply no facts to support an award of punitive damages in this case. As stated above, while there is no doubt a significant amount of money due and owing Plaintiff, this is a standard and ordinary breach of contract case. *See Nebraskaland, Inc. v. River St. Idealease, LLC*, 188 F. Supp. 3d 390, 400 (D.N.J. 2016) ("The law generally does not permit a plaintiff to recover punitive damages for breach of contract claims."); *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 865 (N.J. 1988) (internal quotations omitted) ("With rare exceptions, punitive damages are not available in an action for a breach of contract . . . and have been restricted to tort actions[.]"); *Jayme v. MCI Corp.*, 328 F. App'x 768, 771 (3d Cir. 2008) (unpublished) ("Under New Jersey law, punitive damages for breach of contract generally are not recoverable."). Thus, Plaintiff fails to state a plausible claim for punitive damages.

The Court finds it appropriate to award Plaintiff $1,905,959.40—the amount of money owed—and default judgment is entered against Defendants in that amount. Additionally, because the Court did not grant the Motion under the statutes which provide for an award of attorney's fees, that request is denied.

## IV.    **SANCTIONS**

Federal Rule of Civil Procedure 11 authorizes courts to sanction—

> the signatory to any pleading, motion or other paper which is not well grounded in fact nor warranted by existing caselaw or a good faith argument for the extension, modification, or reversal of existing law, or which is interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

*Landon v. Hunt*, 938 F.2d 450, 452 (3d Cir. 1991). "The standard for testing conduct under Rule 11 is reasonableness under the circumstances. The rule imposes on counsel a duty to look before leaping[.]" *Keister v. PPL Corp.*, 318 F.R.D. 247, 255 (M.D. Pa. 2015) (citations omitted). Sanctions under the Rule are particularly appropriate when the offending party demonstrates "a deliberate indifference to obvious facts." *Id.* at 256 (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

The Rule applies to "any attorney, law firm, or *party* that violated the Rule or is responsible for the violation." FED. R. CIV. PRO. 11(c)(1); *Lai v. Wei*, No. 07-179, 2007 WL 1963331, at \*4 (D.N.J. June 29, 2007) ("The fact that plaintiff appears *pro se* does not immunize [them] from sanctions pursuant to Rule 11."). Courts must tailor Rule 11 sanctions to the particular circumstances of the case, keeping in mind the Rule's purpose to hold parties accountable and deter frivolous lawsuits and filings. *See Keister*, 318 F.R.D. at 256–57. "The basic principle governing the choice of sanctions is that the least severe sanctions adequate to serve the purpose should be imposed." *Id.* (quoting *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). Courts may consider a number of factors in determining the appropriate sanction, but the ultimate decision remains in the courts' discretion. *See id.*

Plaintiff maintains that Pietro's "Application for Motion to Dismiss for Failure of Proper Service of Process" and his argument that he was not properly served was a blatant misrepresentation to the Court. (Pl. Br., ECF No. 25 at 7). The Court agrees. Defendant Pietro's assertion in his filings that he was never served and that he had no notice of this action, when there is concrete, undisputed evidence (both testimony and photographs of the effectuation of service clearly depicting Mr. Pietro) that he was indeed personally served was a blatant misrepresentation to the Court. Indeed, Defendant Pietro filed an application to dismiss, which the Court considered as opposition to Plaintiff's Motion for Default Judgment, but then failed to appear for the evidentiary hearing the Court held based on his representations. And it was not simply that Defendant Pietro failed to appear. He needlessly and frivolously caused the Court to hold a hearing, for the Plaintiff to be present with counsel, and for several witnesses to testify to establish proper service. All of which was unnecessary. For these reasons, regardless of his *pro se* status, Defendant Pietro's actions and frivolous filings warrant the imposition of reasonable sanctions in the amount of the costs and attorneys' fees related to the hearing. Plaintiff shall submit a certification regarding the costs and attorneys' fees incurred related to the hearing on November 6, 2025. Yet, the sanction is only as to Defendant Peitro as Defendant JGS has never appeared in this matter and Mr. Peitro's

10

filings and actions were on his behalf as an individual only since a corporation must be represented by counsel.

### V.    CONCLUSION

Therefore, for the reasons expressed above, it is ordered that Plaintiffs' Motion for Default Judgment is **GRANTED** in part and **DENIED** in part. (ECF No. 13). Plaintiffs' Motion for Sanctions is **GRANTED**. (ECF No. 25). Plaintiff shall submit a certification and any supporting documentation regarding the costs and attorneys' fees incurred related to the hearing on November 6, 2025, within fourteen (14) days of this Order. The Clerk of the Court shall serve a copy of this Order on Defendants.

**SO ORDERED**.

 /s/ Christine P. O'Hearn
**CHRISTINE P. O'HEARN**
**UNITED STATES DISTRICT JUDGE**

11